UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JACODY ROSE**<br><br>**Plaintiff.**<br><br><br><br>-v-<br><br>**HOMER PLESSY COMMUNITY SCHOOL and ABC INSURANCE CO.**<br><br>**Defendants.** | Civil Action No.:<br><br>Judge:<br><br><br><br>Magistrate:<br><br><br><br>ORIGINAL COMPLAINT |

**COMPLAINT FOR CIVIL DAMAGES**

**I. INTRODUCTION**

1. This is an action for damages brought by Plaintiff Jacody Rose against Defendant Homer Plessy Community School for unlawful employment practices, including pretextual race discrimination, hostile work environment, and wrongful termination in violation of federal law, including Title VII of the Civil Rights Act of 1964, and obtaining a background report

**II. JURISDICTION AND VENUE**

2. This Court has jurisdiction over this action under 28 U.S.C. § 1331, as it arises under federal laws, including Title VII of the Civil Rights Act of 1964, 42 U.S.C.

§ 2000e et seq., and the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 *et seq*.

3. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because the unlawful employment practices alleged herein occurred in this district, and Defendant conducts business in this district.

### III. PARTIES

4. Plaintiff Jacody Rose is a person of full age of majority and a resident of the State of Louisiana, Parish of Jefferson.

5. Defendant Homer Plessy Community School is a public charter school located in New Orleans, Louisiana, and is subject to Title VII of the Civil Rights Act of 1964.

6. ABC INSURANCE is an insurer licensed to do business in the STATE OF LOUSISANA and is Homer Plessy Community School's liability insurer.

### IV. FACTUAL ALLEGATIONS

7. In the Fall of 2023, Plaintiff Jacody Rose sent his resume directly to the Dean of Students at Homer Plessy Community School for consideration as a candidate.

8. Subsequently, thereafter, Mr. Rose was interviewed and hired as the Head Dean of Culture at Homer Plessy Community School. He was sent a contract of employment on December 13, 2023. The contract for was for a term of for the entire school year, 11 months.

9. There was never a formal application during that process, nor was there ever any background request authorization signed by Mr. Rose.

10. As Head Dean of Culture, Plaintiff's role was to develop "creative, critical, and responsible thinkers" among the student body. Plaintiff utilized a restorative approach to discipline, working collaboratively with other team members to ensure comprehensive support for students.

11. Mr. Rose's responsibilities spanned the entire school, encompassing duties across multiple grade levels to promote a cohesive school culture and positive disciplinary practices.

12. Andrea Arellano, a "white female" and the Director of Social Emotional Learning at Homer Plessy Community School, also held a school-wide role involving multiple grade levels. Her position required collaboration with faculty and staff to address the social and emotional needs of students.

13. While Mr. Rose and Ms. Arellano had different titles, their roles were complementary, with an expectation of collaboration to foster student growth and well-being. According to Defendants, Ms. Arellano was responsible for creating plans to address negative student behaviors, while Mr. Rose was tasked with executing those plans and ensuring appropriate disciplinary consequences.

14. Despite the collaborative nature of their roles, Ms. Arellano created a toxic work environment for Plaintiff by making false and defamatory reports concerning his job performance.

15. Ms. Arellano's conduct undermined the teamwork and cooperation necessary for the success of their shared responsibilities, violating the collaborative ethos promoted by Defendant.

16. Nevertheless, when Mr. Rose would try to implement his role in the process, instead of being supportive, Ms. Arellano would "talk down" to Mr. Rose, and when he would point out that she would embarrass him, she then would manipulate the situation and resort to victimizing herself to gain sympathy.

17. Mr. Rose attempted to resolve the issues because he enjoyed the job. He participated in a meeting with their supervisor to resolve the issues between Ms. Arellano and himself, to no avail. He was berated. He was mortified by the situation.

18. On or about March 13, 2024, Defendant terminated Plaintiff's employment, citing a background check report that revealed a prior criminal conviction. However, he never signed any documents authorizing the Defendants to do so.

19. Soon thereafter, Mr. Rose filed a charge of discrimination with the EEOC and the National Labor Relations Board.

20. On October 16, 2024, Mr. Rose received his right to sue letter from the EEOC. [Attachment A]

21. Defendant's actions have caused Plaintiff significant economic and emotional harm, including lost wages, emotional distress, and reputational damage.

## V. CLAIMS FOR RELIEF

<u>COUNT I: RACE DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964</u>

22. Defendant engaged in unlawful employment practices in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., which prohibits employers from discriminating against employees on the basis of race.

23. Defendant's discriminatory conduct included allowing a hostile work environment, failing to address false and defamatory allegations made by Ms. Arellano, and terminating Plaintiff under pretextual reasons.

24. Defendant's reliance on Plaintiff's prior criminal background as a justification for termination was a pretext for racial discrimination, as Plaintiff's prior criminal history had been disclosed during the hiring process and was not initially deemed disqualifying.

25. Plaintiff's race was a motivating factor in the adverse actions taken against him, including his wrongful termination.

26. On at least two occasion, Mr. Rose participated in restorative meetings to make sense of things, but he was criticized and also believed that Ms. Arellano made false accusations by embellishing his handling of disciplinary issues with students to lay a foundation of Mr. Rose being "aggressive."

27. Mr. Rose subsequently made Ms. Arellano behaving in a hostile manner toward him, Ms. Arellano decided to weaponize the fact that Mr. Rose was a black man in front of their peers, denying that she spoke down to him and then began to cry is if was mortified by the implication of being dismissive and condescending to him.

28. On information and belief, thereafter, Homer Plessy Community School Staff decided that Mr. Rose would not be a fit for the school based on Ms. Arellano's contentions.

29. On information and belief, the Homer Plessy Community School then initiated a background check with their Human Resource Consulting Firm without Mr. Rose's consent,

## COUNT II.    VIOLATION OF THE FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681 *et seq.*

30. Under the Fair Credit Reporting Act (FCRA), employers are required to obtain an individual's written consent before conducting a background check for employment purposes. This consent must be preceded by a clear and conspicuous disclosure, presented in a standalone document, informing the individual that a consumer report may be obtained for employment purposes.

31. Mr. Rose did not fill out any formal application after he was interviewed. He was interviewed on the strength of his resume.

32. In fact, when the Defendants discovered Mr. was available earlier than anticipated, the school asked him to start earlier.

33. Nevertheless, in supplying him with an offer of employment, Homer Plessy did not present Mr. Rose with an authorization for a background check.

34. The actions of Home Plessy Charter School violated the Fair Credit Reporting Act as follows:

    a. Lack of Disclosure: Homer Plessy failed to provide a clear and conspicuous written disclosure, in a document consisting solely of the disclosure, stating that a consumer report may be obtained for employment purposes.

    b. Absence of Written Authorization: The employer did not obtain the individual's written authorization to procure the consumer report, as mandated by the FCRA

    c. Procurement of Consumer Report: Despite the lack of disclosure and authorization, the Homer Plessy obtained Mr. Rose's consumer report through a third-party contractor with his express written consent.

    d. Adverse Action Without Proper Procedure: Homer Plessy then took adverse action based on the information in the consumer report.

    e. Willful or Negligent Non-Compliance: Homer Plessy's actions demonstrate a willful or negligent disregard for the FCRA's requirements, entitling Mr. Rose to statutory damages, punitive damages, and attorney's fees.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

a) Compensatory damages for lost wages, emotional distress, and reputational harm;

b) Punitive damages as permitted by law;

c) Pre- and post-judgment interest;

d) Costs and attorney's fees;

e) Such other and further relief as this Court deems just and proper.

[This section intentionally left blank]

## VII.    REQUEST FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Respectfully Submitted,

/s/ Veleka Eskinde

**VELEKA ESKINDE, ESQ. LSBN 28305**
LAW OFFICE OF VELEKA ESKINDE, LLC
3205 Orleans Ave
New Orleans, LA 70119
Office: (504) 565-1022
fax: (504) 565-1021
velekaeskindelaw@gmail.com

### Certification

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

January 15, 2025