UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JACODY ROSE                                            CIVIL ACTION

VERSUS                                                 NO. 25-114

HOMER PLESSY COMMUNITY SCHOOL ET AL          SECTION: KWR

## ORDER AND REASONS

Before the Court is a **Motion to Dismiss Plaintiff's Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) (R. Doc. 18)** filed by Defendants Homer Plessy Community School ("Homer Plessy") and Liberty Mutual Insurance Company ("Liberty") (collectively "Defendants"). Plaintiff, Jacody Rose ("Rose") opposes the Motion to Dismiss. R. Doc. 23. Defendants also filed a Reply in Support of Rule 12(B)(6) Motion to Dismiss. R. Doc. 25.

   I.   **Background**

   A.  **Factual Background**

In the fall of 2023, Plaintiff Jacody Rose, an African American, applied for the Head Dean of Culture position at Homer Plessy Community School. R. Doc. 1 at 2. He alleges that after his interview, he received a contract of employment for the entire school year on December 13, 2023. *Id.* Rose claims there was never a formal application during his interview process, nor was there any background request authorization signed by him. *Id.* He also claims that he disclosed his prior criminal history during the hiring process, which did not initially disqualify him from employment. *Id.* at 5. As Head Dean of Culture, Rose contends he had an expectation to collaborate with Andrea Arellano, a white female who was the Director of Social and Emotional Learning at Homer Plessy. *Id.* at 3. According to Rose, Arellano was supposed to create plans to address negative student

behavior while it was his job to execute the plan and ensure appropriate disciplinary consequences. *Id.* Rose alleges Arellano created a toxic work environment and undermined his efforts to carry out his job duties. *Id.* Rose particularly claims that Arellano talked down to him and embarrassed him but then would resort to "victimizing herself to gain sympathy." *Id.* at 4. Rose attempted to resolve the conflict by meeting with their supervisor but claims Arellano continued to berate him. *Id.* On or about March 13, 2024, Rose claims Homer Plessy terminated his employment, citing a background check report revealed a prior criminal conviction. *Id.* However, Rose maintains he never signed any documents authorizing Homer Plessy to conduct a background check. *Id.*

After his termination, Rose filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the National Labor Relations Board. R. Doc. 1 at 4. The EEOC issued a Notice of Right to Sue on October 16, 2024. R. Doc. 1-2. Thereafter on January 15, 2025, Rose filed the subject lawsuit first alleging that his employer Homer Plessy engaged in discriminatory employment practices in violation of Title VII of the Civil Rights Act of 1964. *Id.* at 1.[1]

Rose contends that Homer Plessy's reliance on an unauthorized background report as justification for his termination was pretext for race discrimination. *Id.* at 5. Rose additionally contends that Homer Plessy failed to address the false and defamatory allegations made by Arellano, which created a hostile work environment. *Id.* Rose does not explain the nature of the defamatory allegations. *Id.* Nevertheless, as a result of the alleged discrimination, Rose maintains that he suffered significant economic and emotional harm, including lost wages, emotional distress, and reputational damage. *Id.* at 4.

---

[1] Rose names ABC Insurance Co. as a Defendant in the complaint. R. Doc. 1 at 1. However, the record reflects that ABA Insurance Co. is Liberty Mutual Insurance Company.

Rose further claims that Homer Plessy violated the Fair Credit Reporting Act ("FCRA") because the school ran a background check without first obtaining his written consent. R. Doc. 1 at 6. Rose contends that employers are required to obtain an individual's written consent on a clear and conspicuous disclosure before conducting a background check for employment purposes. *Id.* Rose also contends that the consent form must disclose to the individual that a consumer report may be obtained for employment purposes. *Id.* Rose further alleges that Homer Plessy took adverse action to terminate him based on the consumer report it obtained from their Human Resource Consulting Firm. *Id.* at 7. For these reasons, Rose argues that Homer Plessy's actions demonstrate a willful or negligent disregard for the FCRA's requirements, entitling him to statutory damages, punitive damages, and attorneys' fees. *Id.*

**B.  Motion to Dismiss**

Defendants Homer Plessy and Liberty Mutual Insurance Company now move to dismiss all of Rose's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). R. Doc. 18. Liberty claims Louisiana's Direct Action Statute, La. R.S. 22:1269, precludes direct actions against insurers. *Id.* at 1. Next, Homer Plessy contends Rose's Title VII claims are time-barred because he failed to file suit within ninety days of receipt of his right to sue. *Id.* Homer Plessy also contends Rose fails to plead facts sufficient to establish plausible claims of racial discrimination and a hostile work environment under Title VII. *Id.* Additionally, Homer Plessy contends Rose's FCRA claim should be dismissed because Rose signed a "Consent to Procurement Consumer Credit Report" form during his employment on January 21, 2024. R. Doc. 18-1 at 13.  Homer Plessy further asserts that it did not utilize the services of a consumer reporting agency that would trigger applicability of the statute. *Id.*

In his opposition, Rose maintains his lawsuit is timely because he claims he did not receive the notice until October 18, 2024, by mail. R. Doc. 23 at 6. Rose contends that when notices are mailed, courts presume receipt three days after mailing absent evidence to the contrary. *Id.* Rose additionally argues he has stated a plausible claim for hostile work environment because his co-worker's consistent false accusations against him created an abusive working environment. *Id.* at 7. Rose further argues that his termination was motivated by racial bias towards him and thus states a claim for race discrimination. *Id.* With respect to Liberty, Rose contends the claims should not be dismissed because courts must allow factual development in order to determine whether statutory exceptions apply under La. R.S. 22:1269 to permit an action against an insurer. *Id.* at 8.

Lastly, concerning the FCRA claim, Rose does not dispute that he signed a document after he was hired, but he contends no standalone disclosure was provided to obtain his consent as required by the FCRA. R. Doc. 23 at 8. *Id.* Rose contends the disclosure was instead embedded within a broader collection of materials and policies. *Id.* at 17. Moreover, Rose contends Homer Plessy did not seek to procure a background check until after he raised internal complaints which is a deviation from the school's standard onboarding procedure. *Id.* at 20. Rose therefore complains that this deviation violates the FCRA and disregards his rights. *Id.* at 19.

## II.   Standard of Review – Federal Rule of Civil Procedure 12(b)(6)

To overcome a Rule 12(b)(6) motion, a party must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court must "accept all

factual allegations in the complaint as true" and "must also draw all reasonable inferences in the plaintiff's favor." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009).

A legally sufficient complaint must establish more than a "sheer possibility" that the party's claim is true. *See Iqbal*, 556 U.S. at 678. It need not contain "'detailed factual allegations,'" but it must go beyond "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'." *See id.* (quoting *Twombly*, 550 U.S. at 555). In other words, "[t]he complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim." *Lormand*, 565 F.3d at 256 (citations omitted). The claim must be dismissed if there are insufficient factual allegations "to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, or if it is apparent from the face of the complaint that there is an insuperable bar to relief. *See Jones v. Bock*, 549 U.S. 199, 215 (2007).

"In considering a motion to dismiss for failure to state a claim, a district court must limit itself to the contents of the pleadings, including attachments thereto." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). "The court may also consider documents attached to either a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims." *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014). Otherwise, if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." *Id.* at 635, fn.9.

### III.   Analysis

#### A.  Claims Against Liberty Mutual Insurance

As a preliminary matter, Defendants assert that Liberty Mutual must be dismissed as a party in light of Louisiana Legislature's amendments to the Direct Action statute, which effectively precludes direct actions against insurers. R. Doc. 18-1 at 4. As amended by Act 275 on August 1, 2024, La. R.S. 22:1269(B)(1) provides:

> The injured person or, if deceased, the persons identified in Civil Code Articles 2315.1 and 2315.2, shall have no right of direct action against the insurer unless at least one of the following applies:
>
> (a)    The insured files for bankruptcy in a court of competent jurisdiction or when proceedings to adjudge an insured bankrupt have been commenced before a court of competent jurisdiction.
> (b)    The insured is insolvent.
> (c)    Service of citation or other process has been attempted without success or the insured defendant refuses to answer or otherwise defend the action within one hundred eighty days of service.
> (d)    When the cause of action is for damages as a result of an offense or quasi-offense between children and their parents or between married persons.
> (e)    When the insurer is an uninsured motorist carrier.
> (f)    The insured is deceased.
> (g)    When the insurer is defending the lawsuit under a reservation of rights, or the insurer denies coverage to the insured, but only for the purpose of establishing coverage.

La. R.S. 22:1269(B)(1).

La. R.S. 22:1269(B)(4)(a) and (c) further provide:

> (a) An insurer shall not be included in the caption of any action brought against the insurer pursuant to this Section. The action shall instead be captioned only against the insured defendant or other noninsurance defendants.
> (b) A court may dismiss the action against any insured or other defendant if the action cannot proceed due to any of the circumstances in Paragraph (2) of this Subsection.

La. R.S. 22:1269(B)(4)(a), (c).

The Louisiana Supreme Court has made clear that the Direct Action Statute "does not create an independent cause of action against the insurer. It merely grants a procedural right of action against the insurer where the plaintiff has a substantive cause of action against the insured."

*Soileau v. Smith True Value & Rental*, 144 So. 3d 771, 780 (La. 2013). A plaintiff's right under the Direct Action Statute becomes vested when the plaintiff files suit against the insured. *See id*; *Baker v. Amazon Logistics, Inc.*, 751 F. Supp. 3d 666, 673 (E.D. La. 2024). In essence, La. R.S. 22:1269 facilitates a remedy for an injured third-party against the insurer of the insured tortfeasor. *See Taylor v. Elsesser*, No. 24-2888, 2025 WL 471807, at *3 (E.D. La. Feb. 12, 2025).

After considering the statute and its purpose, the Court finds La. R.S. 22:1269 does not apply to this case. The Direct Action Statute is a Louisiana procedural statute that applies primarily to negligence actions brought under Louisiana Civil Code Articles 2315.1 and 2315.2. In contrast, Rose asserts only federal law claims under Title VII of the Civil Rights Act of 1964 and the Fair Credit Reporting Act. Therefore, the Louisiana Direct Action Statute holds no weight in determining whether Rose's claims against Liberty should be dismissed. The motion to dismiss against Liberty on this ground is denied.

**B. Title VII of the Civil rights Act of 1964**

      **i.    Timeliness**

Defendants next seek to dismiss Rose's Title VII claims on grounds that they are time-barred. R. Doc. 18-1 at 5. Defendants note that Rose admitted in his complaint that he received his EEOC Right to Sue Notice on October 16, 2024, but did not file his complaint until January 15, 2025, one day after the deadline. *Id.*

In his opposition, Rose contends that he did not receive the EEOC Right to Sue letter until October 18, 2024, by mail. R. Doc. 1 at 4; R. Doc. 23 at 6-7. Rose also claims the mailbox rule presumes notice is received three days after mailing absent evidence to the contrary. *Id*. Rose therefore contends his complaint was timely filed within 90 days.

Title VII provides that claimants have ninety days to file a civil action after receiving a right-to-sue notice from the EEOC. *Nilsen v. City of Moss Point, Miss.*, 674 F.2d 379, 381 (5th Cir. 1982) (citing 42 U.S.C. § 2000e–5(f)(1)). This requirement to file a lawsuit within the ninety-day limitation period is strictly construed. *See Ringgold v. National Maintenance Corp.*, 796 F.2d 769, 770 (5th Cir.1986); *Espinoza v. Missouri Pacific R.R. Co.*, 754 F.2d 1247, 1251 (5th Cir.1985). Courts within the Fifth Circuit have repeatedly dismissed cases in which the plaintiff did not file a complaint until after the ninety-day limitation period had expired. *See, e.g., Butler v. Orleans Parish School Board*, No. 00-0845, 2001 WL 1135616, at *2 (E.D. La. Sep. 25, 2001) (dismissing Title VII claims where pro se plaintiff filed her complaint one day beyond the ninety-day period).

Effective November 16, 2020, the EEOC implemented procedures for digital transmission of EEOC documents. The EEOC provides that a "charging party will receive an email notifying him or her that an important document is available." Procedural Regulations Under Title VII, ADA, and GINA; Procedures – Age Discrimination in Employment Act ("Procedural Regulations"), 85 F.R. 65214-01, 2020 WL 6060842, at *65125 (Oct. 15, 2020). Most importantly, the EEOC provides that only if a charging party "does not log in and access critical documents, ... [will] the EEOC [ ] mail a hard copy of the notice to the parties." *Id.* Thus, the date that Plaintiff logs on and accesses the digital copy of the Right to Sue Notice would trigger the ninety-day period. *Cerroni v. Smith's Food & Drug Centers, Inc*., No. 2:23-CV-00005-JCB, 2023 WL 3467466, at *1 (D. Utah May 15, 2023) (holding that time for Plaintiff to file suit began running when notice of availability of the Right to Sue Notice on the EEOC Public Portal was electronically sent to Plaintiff's counsel).

Here, Rose's complaint states that the Notice of the Right to Sue was received on October 16, 2024. R. Doc. 1 at 4. Rose's Notice of Right to Sue was also attached to the complaint. R. Doc.

1-2. However, in his opposition to the Motion to Dismiss, Rose claims that he actually received the notice by mail on October 18, 2024, and seems to be confirmed by the notice which includes his mailing address. R. Doc. 23-1 at 7. Additionally, the Court has not been provided an activity log related to the notice which if sent electronically would likely show if and when Rose digitally accessed the document to retrieve the notice. Further, the copy of the notice attached to the complaint only shows that it was issued on October 16, 2024. It does not show whether the notice was sent electronically or through the mail. R. Doc. 1-2.

Because the Court must limit its review to the factual allegations within the complaint, which incorporates attached documents, the actual date of when Rose received the notice is unclear. *See Eguakan v. Gusto, Inc.*, No. 23-CV-01713-SKC-STV, 2024 WL 3416387, at *4 (D. Colo. May 15, 2024), *report and recommendation adopted sub nom. Eguakun v. Gutso, Inc.,* No. 1:23-CV-01713-SKC-STV, 2024 WL 3415038 (D. Colo. July 15, 2024), *report and recommendation adopted.* Defendants further have presented no evidence to show that Rose digitally accessed his EEOC Right to Sue Notice, which prompts the court to apply the mailbox rule. *See Gamel v. Grant Prideco*, LP, 625 Fed. App'x 690, 694 (5th Cir. 2015) ("when doubt exists as to whether [and when] an addressee received a letter, [courts] have previously applied the mailbox rule…."). In the absence of sufficient evidence to create the presumption that Plaintiff's right-to-sue letter was sent on a particular date, the Defendants have not met their burden of proving that Rose did receive notice on October 16, 2024. Therefore, the Court finds Rose's complaint is timely, and the Motion to Dismiss should be denied on this basis.

    **ii.**   **Failure to State a Claim**

       **a.  Racial Discrimination**

Even if Rose's claims are timely, Defendants maintain the claims should otherwise be dismissed for failing to plead facts sufficient to support his claims. Regarding race discrimination, Defendants particularly argue that Plaintiff has failed to allege that he was treated less favorably than similarly situated employees. R. Doc. 18-1 at 7. In other words, Defendants assert Rose does not allege that non-African American colleagues would not have been terminated upon revelation of criminal history, or similarly serious concerns. *Id.* at 8. Defendants further contend Homer Plessy had a legitimate reason for his termination based on his criminal history and is therefore non-discriminatory in nature. *Id.*

Rose's complaint alleges that Defendant's engaged in discriminatory conduct when Homer Plessy refused to address false and defamatory allegations made by his white co-worker Andrea Arellano. R. Doc. 1 at 5. Rose particularly alleges that she would label him as "aggressive", weaponize the fact that he was a black man in front of their peers, and speak down to him. *Id.* Rose contends that instead of addressing his concerns Homer Plessy fired him because of his race and used an unauthorized criminal background check as pretext for racial discrimination. *Id.* Further in the motion to dismiss, Rose elaborates that Homer Plessy decided to procure the unauthorized background check only after he filed internal complaints about the harassment. R. Doc. 23 at 9.

Notably, Rose does not attach his Charge of Discrimination to the complaint for the Court to ascertain the scope of his allegations. The right to sue notice also does not categorize the basis of the discrimination. *See* R. Doc. 1-2 at 1. Regardless, the Court has broad discretion in handling motions to dismiss and should proceed with caution to ensure the Plaintiff's right to have a claim adjudicated on the merits is not violated. *See Grant v. Houser*, No. 10-805; 10-872, 2010 U.S. Dist. LEXIS 92801, at *4 (E.D. La. Aug. 17, 2010) (citing 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1349 (3d ed. 2004).

Although the McDonnell Douglas framework governs the standard of proving Title VII discrimination at trial, "a plaintiff need not make out a prima facie case of discrimination in order to survive a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Stone v. La. Dep't of Revenue*, 590 Fed. App'x 332, 339 (5th Cir. 2014) (citing *Raj v. Louisiana State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013). As the Supreme Court has explained:

> "[I]f a plaintiff is able to produce direct evidence of discrimination, they may prevail without proving all the elements of a prima facie case…. It thus seems incongruous to require a plaintiff, in order to survive a motion to dismiss, to plead more facts than he may ultimately need to prove to succeed on the merits if direct evidence of discrimination is discovered."

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002).

As such, the proper standard for examining a Title VII discrimination claim is whether the plaintiff has "pleaded factual content [that] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *Sobranes Recovery Pool I, LLC v. Todd & Hughes Const. Corp.*, 509 F.3d 216, 221 (5th Cir. 2007). Title VII makes it unlawful for any employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race…." 42 U.S.C. § 2000e-2(a)(1). "Because an adverse employment action is an element of a racial discrimination claim, a plaintiff must allege that [he] suffered an adverse employment action because of racial discrimination." *Stone*, 590 Fed. App'x at 339.

Here, the facts in Rose's complaint plausibly alleges a claim for racial discrimination. Rose alleges that he is an African American male and that his co-worker Andrea Arellano is a white female. R. Doc. 1 at 3. Rose claims that Ms. Arellano made false allegations against him as being "aggressive" and "weaponize[ed] the fact that Mr. Rose was a black man." *Id.* at 5. Rose alleges that Homer Plessy did not address his co-worker's alleged racially motivated statements and

instead initiated an unauthorized background check against him to justify his dismissal because he was a black man. *Id.* Rose particularly claims that the background check revealed a prior criminal conviction in which Homer Plessy cited as reason for his termination. *Id.* However, Rose contends that he disclosed his prior criminal history during the hiring process, which was not initially deemed disqualifying by the school. *Id.* Drawing reasonable inferences in the Plaintiff's favor, the Court construes that he could likely prove that race was a motivating favor for his termination.

### b. Hostile work environment

Defendants next claim that Rose has failed to support his Title VII hostile environment claim. Defendants argue that Rose fails to establish that the proposed harassment was based on his race and that the alleged harassment affected a term, condition, or privilege of his employment. R. Doc. 18-1 at 9. Defendant further maintains Rose does not allege that Homer Plessy knew or should have known of the alleged harassment and failed to take prompt remedial action. *Id.* at 12.

On the other hand, Rose's complaint alleges that his co-worker's racially motivated statements created a hostile work environment. R. Doc. 1 at 3. The complaint contends that Rose went to his supervisor at Homer Plessy to discuss the situation. *Id.* at 4. Instead of taking measures to resolve the conflict even after Rose complained, Homer Plessy allegedly initiated a background check with their human resources consulting firm and then used the report to terminate Rose's employment. *Id.* at 5. In his opposition, Rose particularly maintains that Homer Plessy failed to address consistent ridicule, false accusations, and manipulations by a coworker who cast him around the school as "the angry black man." R. Doc. 23 at 8.

Similar to the retaliation claim, a plaintiff must state a hostile work environment claim by "pleading all facts necessary to establish the "ultimate elements." *Jasso v. Midland-Odessa Transit Mgmt., Inc.*, No. 22-cv-250, 2023 WL 6474435, at *4 (W.D. Tex. Sep. 19, 2023); (quoting *Chhim*

*v. Univ. of Tex. At Austin*, 836 F.3d 467, 470 (5th Cir. 2016). To survive a motion to dismiss, a plaintiff must allege fact satisfying two elements: "1) an adverse employment action which was 2) taken against a plaintiff because of [his] protected status." *Id.* (citing *Johnson v. PRIDE Indus., Inc.*, 7 F.4th 392, 399-400 (5th Cir. 2021).

Here, the Court finds that Rose has pleaded enough facts at this stage to state a hostile work environment claim under Title VII. Rose claims he was subjected to a hostile work environment by his co-worker who constantly embarrassed him and berated him at the Homer Plessy Community School. Rose alleges that he complained to Homer Plessy about his white co-worker's actions and alleges that Homer Plessy did not take remedial action and instead terminated him based on the racist trope of "the angry back man." R. Doc. 23 at 8. Accepting the fact as true, the Court declines to dismiss Rose's hostile work environment claim.

### C.  Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*.

Defendants lastly contend that Rose's claim pursuant to the Fair Credit Reporting Act should be dismissed for failing to state a claim for which relief may be granted. R. Doc. 18-1 at 13.  Defendants contend that Rose signed a "Consent to Procurement of Consumer Credit Report" form on January 21, 2024, where he acknowledged that the report would include, *inter alia,* his criminal and civil history. *Id.* at 13-14. Defendants contend the disclosure was clear, conspicuous, in writing, and made in a standalone document. *Id.* Defendants further contend that Homer Plessy did not procure Rose's background check from a consumer reporting agency, but rather the Louisiana State Police which falls outside of FCRA. *Id.*

Rose argues that because the Defendants' disclosure is embedded within a broad collection of materials and policies, it is therefore not a standalone document in accordance with the FCRA. R. Doc. 1 at 6; R. Doc. 23 at 17.  Rose also claims Homer Plessy presented the disclosure only

after his internal complaints were raised and was procured by a third-party contractor. R. Doc. 1 at 6; R. Doc. 23 at 18. Rose therefore contends that the time of the background check and its use supports a claim of pretext and retaliatory motive. *Id.* Rose further claims that he did not receive a copy of the consumer report or a summary of his FCRA rights prior to his termination. R. Doc. 1 at 6; R. Doc. 23 at 22.

The FCRA governs "consumer reporting agencies" which maintain credit information on consumers and provide it to third parties. *See* 15 U.S.C. § 1681 (stating the purpose of the FCRA); *id.* § 1681a(f) (defining "consumer reporting agencies"). A central purpose of the Act is to ensure the "confidentiality, accuracy, relevancy, and proper utilization of [consumers' credit] information." *Id.* § 1681(b). *Washington v. CSC Credit Servs. Inc.*, 199 F.3d 263 (5th Cir. 2000). [A] person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer unless—

> (i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and
> (ii) the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

15 U.S.C. § 1681b(b)(2)(A) (emphasis added).

Anyone who "willfully fails" to comply with FCRA requirements is civilly liable to the consumer for:

> (1)(A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000; or
> (B) in the case of liability of a natural person for obtaining a consumer report under false pretenses or knowingly without a permissible purpose, actual damages sustained by the consumer as a result of the failure or $1,000, whichever is greater;
> (2) such an amount of punitive damages as the court may allow; and
> (3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

15 U.S.C. § 1681n(a).

>    Under the FCRA, the term "consumer report" means:
>
>    [A]ny written, oral, or other communication of any information by a consumer
>    reporting agency bearing on a consumer's credit worthiness, credit standing, credit
>    capacity, character, general reputation, personal characteristics, or mode of living
>    which is used or expected to be used or collected in whole or in part for the purpose
>    of serving as a factor in establishing the consumer's eligibility for —
>    (A) credit or insurance to be used primarily for personal, family, or household
>    purposes;
>    (B) employment purposes; or
>    (C) any other purpose authorized under section 1681b of this title.

15 U.S.C. § 1681a(d)(1).

Consumer reports under the FCRA have "essentially been limited to information that is used or expected to be used or collected in connection with a 'business transaction' involving one of the 'consumer purposes' set out in the statute, that is, eligibility for personal credit or insurance, employment purposes, and licensing." *Haberman v. PNC Mortg. Co.*, No. 4:11-cv-126, 2012 WL 12353940, at *8 (E.D. Tex. Sept. 7, 2012) (citing *Cavaliere v. Burke*, 50 F.3d 1033, at *4 (5th Cir. 1995); *see* 15 U.S.C. § 1681a(d)(1) (defining a "consumer report" as "communication of any information ... which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility ....") (emphasis added).

Here, Rose has plausibly stated a claim under the Fair Credit Reporting Act. First, criminal background checks obtained for employment purposes constitute a "consumer report" under the FCRA. *See Shelton v. McLane Co.*, No. 1:17-cv-888, 2018 WL 3453883, at *9 (W.D. Tex. July 16, 2018) (citing FTC Advisory Opinion 06-11-98). Next, although Rose does not dispute that he signed a document that may have been related to a background check, he contends that the document did not constitute a clear and conspicuous standard disclosure as required by 15 U.S.C.

1681b(b)(3)(A). Defendants counter that Rose signed a form consenting to the procurement of his consumer credit report evidencing his authorization on a standalone document, which is attached to their motion. R. Doc. 18-2 at 1. The document, however, is not limited to an employment background check and included at least 10 other categories of information checks. Further, at the motion to dismiss stage, the Court cannot consider matters outside of the facts stated in the complaint and documents attached thereto without converting the Motion to Dismiss into the Motion for Summary Judgement. *See Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996); *Ace Am. Ins. Co. v. Huntsman Corp.*, 255 F.R.D. 179, 188 (S.D. Tex. 2008). Thus, the Court accepts Rose's allegations as true and further accepts as true that Defendant obtained the report from their Human Resource Consulting Firm who is a third-party contractor rather than the Louisiana State Police. Whether the report was obtained by a third-party contractor, or the state police cannot be determined at this stage of the litigation.

Likewise, Rose alleges that Defendants relied on the background report to take adverse employment action without providing him with a copy of the consumer report or a summary of his FCRA rights prior to termination, as required by 15 U.S.C. § 1681b(b)(3). Under the FCRA, Rose has the right to specific information at specific times. *See Lujan v. Defenders of Wildlife*, 504 U.S. 560, 561, 112 S. Ct. 2130, 119 L.Ed.2d 351 (1992). For example, whenever an individual is rejected for employment because of an adverse credit report, the individual is given the right to be told the name of the agency making the report and an opportunity to correct inaccurate or misleading information in his credit file. *Panzer v. Swiftships, LLC*, No. 15-2257, 2015 WL 6442565, at *12 (E.D. La. Oct. 23, 2015); 15 U.S.C. § 1681b(b)(3)(A). Therefore, the allegations that Defendants failed to provide that information, or that they provided the information after it

was required are sufficient to posit "an invasion of a legally protected interest which is (a) accurate and particularized and (b) actual or imminent, not conjectural or hypothetical." *Id.*

Moreover, the FCRA defines an "adverse action" as "a denial of employment or any other decision for employment purposes that adversely affects any current or prospective employee." *Id.* § 1681a(k)(1)(B)(ii). Because Rose claims that he was terminated once Defendants received the report in which the Defendants do not despite and Rose contends that he suffered economic, emotional, and reputational harm, he has satisfied the adverse action requirement. The motion to dismiss the FCRA claim is denied.

## IV.    Conclusion

Accordingly,

**IT IS ORDERED** that **Defendants' Motion to Dismiss (R. Doc. 18)** be **DENIED** for the reasons assigned above.

New Orleans, Louisiana, this 30th day of January 2026.

_____

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**